## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>LG ELECTRONICS INC.,<br>LG ELECTRONICS U.S.A., INC.,<br>LG ELECTRONICS MOBILECOMM U.S.A., INC., and LG ELECTRONICS ALABAMA, INC.<br><br>*Defendants*. | Civil Action No. 4:18-cv-673-ALM |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

**Table of Contents**

Page

I. THE COMPLAINT FAILS TO STATE A CLAIM OF DIRECT INFRINGEMENT FOR THE MARIA PATENTS ................................................................................................ 1

II. THE COMPLAINT FAILS TO STATE A CLAIM OF INFRINGEMENT FOR THE MARIA OR WELLS PATENTS ............................................................................... 3

III. THE WELLS PATENT CLAIMS ARE PATENT INELIGIBLE UNDER § 101 ................ 4

    A. The Claims Are Directed To An Abstract Idea. ........................................................ 4

    B. The Claims Do Not Provide An Inventive Concept. ................................................. 6

    C. There Are No Disputed Facts. ................................................................................... 7

IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR INDIRECT INFRINGEMENT .. 7

    A. Induced Infringement ................................................................................................ 7

    B. Contributory Infringement ........................................................................................ 8

    C. Pre-Suit Allegations and Willful Blindness ............................................................. 9

V. THE COMPLAINT FAILS TO STATE A CLAIM OF WILLFUL INFRINGEMENT .... 10

VI. CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                   **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................2, 4, 9, 10

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)................................1, 3

*CreAgri, Inc. v. Pinnaclife, Inc.*,
    No. 5:11-CV-06635-LHK, 2013 WL 11569 (N.D. Cal. 2013)........................................................2

*Cywee Group Ltd. v. Huawei Device Co.*,
    2:17-CV-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10, 2018) ...........................................8

*Data Engine Tech. LLC v. Google*,
    No. 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018).........................................................6

*Disc Disease Solutions, Inc. v. VHG Solutions, Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)...........................................................................................2, 4

*Epic IP LLC v. Backblaze, Inc.*,
    --- F. Supp. 3d. ---, No. CV 1:18-141-WCB, 2018 WL 6201582 (D. Del. Nov. 26, 2018) ........................................................................................................................7

*FitBit Inc. v. AliphCom*,
    No. 16-cv-00118-BLF, 2017 WL 3129989 (N.D. Cal. July 24, 2017).........................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..............................................................................................................9, 10

*Immersion Corp. v. Fitbit, Inc.*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018) ...................................................................................5, 6

*Nonend Inventions, N.V. v. Apple, Inc.*,
    No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740 (E.D. Tex. 2016) ............................................9

*Romero v. Lann, No.*
    *CIV A 506CV82*, 2007 WL 2010748 (E.D. Tex. July 6, 2007), aff'd, 305 F. App'x 242 (5th Cir. 2008) .........................................................................................7

*Round Rock Research, LLC v. Oracle Corp.*,
    No. 4:11-cv-332-ALM, 2011 WL 11761563 (E.D. Tex. Oct. 25, 2011).....................................2

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)...................................................................................................5

Defendants' motion to dismiss Plaintiff's complaint details its numerous failures to state a claim upon which relief can be granted. And Plaintiff's opposition confirms that the complaint should be dismissed. Contrary to Plaintiff's arguments, the complaint does not include "specific, factual, and plausible allegations," but instead recites generic boilerplate. LGE's motion to dismiss should be granted because Plaintiff's complaint lacks factual matter showing it is entitled to relief for direct, indirect, and willful infringement; and because claims of the Wells patents are patent ineligible under Section 101.

**I.    THE COMPLAINT FAILS TO STATE A CLAIM OF DIRECT INFRINGEMENT FOR THE MARIA PATENTS**

LGE's motion explained it cannot directly infringe the Maria patents as alleged because LGE does not sell accused devices possessing the features depicted in the complaint.[1] *See* DI 24 at 9-10. Without contesting this fact, Plaintiff instead argues that its claims should go forward "because LG does sell the devices that American Patents *did* accuse, the LG G7 Thinq." DI 29 at 6-7. But the only features depicted in the complaint are to Google's Home app and Chromecast device. Plaintiff's complaint lacks any plausible basis for alleging that LGE directly infringes the claims by selling LG G7 smartphones without Google's Home app or Chromecast.[2]

In a similar case last month, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018), infringement allegations were "premised on integrating an application called 'Spently' with the Shopify system" sold by the defendant. *Id.* at *3

---

[1] For the Maria patents, Plaintiff's complaint relies on the Google Home app, downloaded from the Google Play Store or other non-LGE source, and a Google Chromecast device, sold by Google or other non-LGE source.

[2] Plaintiff asserts that LGE's devices "run on the Android operating system, which is specifically designed to work with and stream to Google Chromecast devices … whether or not the Google Home app is installed…." DI 29 at 7. But the complaint specifically relies on instructions for the Google Home app as proof of infringement. DI 1 at ¶¶ 22, 33. As Plaintiff has not alleged that LGE installs the Google Home app on the accused devices, its complaint fails to state a plausible claim for direct infringement of the Maria patents.

(internal quotation marks omitted). The court dismissed the claims of direct infringement because there was no allegation that the defendant "owns or controls the Spently app," such that the defendant could be held responsible if the app performed steps of the patented method. *Id.* at *4. So too here Plaintiff's complaint is devoid of any allegations supporting the notion that LGE can be liable for an app (Google Home) and device (Google Chromecast) it does not sell.

Plaintiff does not dispute that device sales cannot infringe a patented method of use; and its infringement-by-selling theory, that fails as a matter of law, should be dismissed "with no opportunity to replead." *Round Rock Research, LLC v. Oracle Corp.*, No. 4:11-cv-332-ALM, 2011 WL 11761563, at *4-5 (E.D. Tex. Oct. 25, 2011). Unable to defend its pled theory, Plaintiff now argues that LGE directly infringes by using its own products. DI 29 at 7. But the complaint lacks factual allegations supporting a claim of LGE's purported use—no who, what, where, when, or how. The complaint's screenshots and website citations do not suggest LGE uses the devices to perform the claimed method steps; at best, they show third-party Google offers separate products that can be used to stream video between devices. *See* DI 24 at 9-10. Although the complaint states LGE has infringed "by making, having made, using, importing, providing, supplying distributing, selling, or offering for sale systems utilizing a method," such bare conclusions need not be taken as true at the pleading stage, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the complaint provides no factual matter to meet the *Iqbal/Twombly* standard.[3]

---

[3] Plaintiff's reliance on *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 5:11-CV-06635-LHK, 2013 WL 11569 (N.D. Cal. 2013), is misplaced. There, the court found the complaint sufficient because it "precisely track[ed] the language of Form 18," which provided an "exception to the specificity requirements of *Twombly* and *Iqbal*." *Id.* at *2. But Form 18 was abrogated by the Supreme Court in 2015 and no longer controls. Thus, claims of direct infringement no longer enjoy an "exception to the specificity requirements of *Twombly* and *Iqbal*," *id.*, as they did when Form 18 was in effect. Claims of direct infringement now must comply with *Iqbal* and *Twombly*. *See Disc Disease Solutions, Inc. v. VHG Solutions, Inc.*, 888 F.3d 1256, 1259-60 & n.3 (Fed. Cir. 2018).

2

Attempting to save its direct infringement claims, Plaintiff argues its complaint was not limited to the patents' method claims. DI 29 at 7-8. But there is no mention of the Maria patents' "multiple apparatus claims" anywhere in the complaint. Instead, the complaint only states "facts" related to method claims 5 of the '655 patent, and 1 of the '090 patent.[4] If Plaintiff cannot support a claim of infringement as to the only claims it pled, there is nothing left to support a claim of infringement, and the direct infringement allegations under the Maria patents should be dismissed.

## II. THE COMPLAINT FAILS TO STATE A CLAIM OF INFRINGEMENT FOR THE MARIA OR WELLS PATENTS

The complaint's boilerplate allegations, consisting of parroted claim language without conveying a theory of infringement that ties the accused device to an element of the asserted claims, fails to state a plausible claim of infringement. Defending its defective pleading, Plaintiff argues that "nothing short of element-by-element infringement contentions *actually proving* infringement would be enough to satisfy LG at the pleadings stage." DI 29 at 3. But LGE's motion does not seek to require Plaintiff to prove its claims at the pleading stage; it simply seeks that Plaintiff provide sufficient detail to give fair notice of infringement, as required by law.

The recent decision in *Chapterhouse* is instructive. In that case, plaintiff identified a specific patent claim and a specific product, and broke down "the exemplary claim into individual elements with 'supporting' screenshots." 2018 WL 6981828 at *2. Like American Patent's complaint, the *Chapterhouse* complaint addressed each claim element, parroting the claim language, stating that the accused product had the element, and referring to exemplary screenshots, with no further

---

[4] Presumably, Plaintiff chose to assert method claims believing they were most likely to be infringed; and because Plaintiff has no case as to the other claims. The '655 patent has one set of non-method claims, which are directed to a "network element" having "a port to couple the network element to a user" and "a port to couple the network element to a network resource"—features clearly lacking in the accused devices. '655 at 6:17-27. The '090 patent has two sets of non-method claims, one for a "computer system" comprising multiple devices and the other a "computer program product," also lacking in the accused products. '090 at 5:45-67, 6:44-60.

3

explanation about the relationship between the screenshots and the element. *Id.* The plaintiff argued that this was more than enough, "as the Federal Circuit has now made clear in *Disc Disease*." *Id.* Judge Gilstrap, however, found *Disc Disease* "inapposite":

> Contrary to the relatively simple patents of *Disc Disease*, the four patents and 13 independent claims here cover the hardware and software involved in an electronic transaction receipt system that allows digital receipts to be generated from information electronically read from the product and provides additional purchase opportunities to customers. Accordingly, the Court finds that there are both more claims and more complicated patents than those at issue in *Disc Disease*.

*Id.* Parroting a claim element with accompanying screenshots "is a mere conclusory statement" and "accompanying factual allegations" are required. "While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met." *Id*.

Likewise here, because the complaint does nothing more than parrot claim limitations and paste wholly unexplained excerpts from webpages, this Court should dismiss the direct infringement claims. With respect to the Maria patents, this result is particularly appropriate as the complaint indicates Google products, not offered for sale by LGE, are required to satisfy one or more claim elements. Even now, after Defendant identified specific issues with the infringement allegations in the complaint, Plaintiff cannot explain in any more detail how the elements of the claims allegedly are met by LGE. Similarly, with respect to the Wells Patents, Plaintiff fails to address LGE's argument that the complaint "does not identify what claim limitations are alleged to correspond with the information included in the screenshots." DI 24 at 11.

### III.   THE WELLS PATENT CLAIMS ARE PATENT INELIGIBLE UNDER § 101

#### A.   The Claims Are Directed To An Abstract Idea.

Attempting to defend the claims under *Alice* step one, Plaintiff relies on the specification's

4

"Background," and discussion of various known sensors to assert the patents are not directed to an abstract idea. DI 29 at 9-11. However, "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). Plaintiff admits that the "technological solution" includes "the use of two separate sensors" and "a controller." *See* DI 29 at 10. And the claims require that the first sensor determines a location, the second sensor detects motion, and the controller analyzes data from both sensors. *See* DI 24 at 12. Thus, the claims are simply directed to using known devices (two sensors) to perform the devices' routine function, and then use a generic processor (controller) to analyze the sensor data. As explained in LGE's motion, receiving sensor data signals constitute mere data gathering, and the generic controller merely analyzes the data. *See* DI 24 at 12-13. Data gathering and data analysis are abstract ideas.[5] *See Immersion Corp.*, 313 F. Supp. 3d. at 1027.

Although Plaintiff criticizes LGE's motion for addressing one claim from each related patent, and pointed to dependent claims reciting specific sensor limitations, the additional limitations in dependent claims recite known, conventional, commercially available sensors, and the claims set forth in LGE's motion are representative--Plaintiff did not contend otherwise.[6]

---

[5] Contrary to Plaintiff's contentions, LGE identified cases in which § 101 was extended to device patents. *See* DI 24 at 13-14 (citing *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1028 (N.D. Cal. 2018) (The court found that a system claim was "directed to receiving sensor and data signals, analyzing those signals, and outputting other signals in response" and that under the *Alice* test, such a claim fell "within the category of gathering and processing information, which the Federal Circuit has established is an abstract idea") *id.* at 1027; and *Cellular Commc'ns Equip. v. AT&T Inc.*, No. 2:15-cv-00576-RWS-RSP, 2017 WL 2984074, at *4 (E.D. Tex. June 27, 2017) (The Court held that claims 1-3, which were directed to an apparatus, were directed to an abstract idea and had no inventive element or combination of elements. *See* 2017 WL 2984074, at *5.))

[6] Plaintiff also argues LGE ignored the prosecution histories and that the Wells patents were not subjected to § 101 rejections in the Patent Office. DI 29 at 9. The failure of an examiner to address an issue, however, is not evidence the patent is valid regarding that issue. And even "[a]n examiner's statements about a patent are not themselves evidence of a patent's validity." *FitBit Inc. v. AliphCom*, No. 16-cv-00118-BLF, 2017 WL 3129989, at *2 (N.D. Cal. July 24, 2017).

Plaintiff's reliance on *Data Engine Tech. LLC v. Google*, No. 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018) is misplaced. Contrary to the present case, in *Data Engine*, the Court noted "the claims require a specific interface and implementation for navigating complex three-dimensional spreadsheets using techniques unique to computers." *Data Engine* at 15. Here, the *claims* recite known sensors that perform their routine function, and a generic processor that merely analyzes data from the sensors, and, thus, are directed to abstract ideas.

### B. The Claims Do Not Provide An Inventive Concept.

Under *Alice* step two, Plaintiff again refers to the specification, contending the Wells patents "disclose several inventive concepts that ensure patent-eligibility." Here, like in *Immersion Corp.*, "none of the claim elements, assessed individually, provide an inventive concept," and "the ordered combination of these elements also does not yield an inventive concept." 313 F. Supp. 3d at 1030. In *Immersion Corp.*, the court found the "mobile devices, network interface, processor, and haptic feedback system are, in broad terms, generic conventional components," and the "claim calls on these generic components to perform their routine functions. *Id.* Plaintiff argues that LGE does not cite any evidence that the claimed position sensor, motion sensor, and controller are generic. DI 29 at 14. Yet, its opposition does not--and cannot--point to any evidence the components are not generic. *See e.g.*, '584 at 3:13-15 (controller such as standard microprocessor), 4:22-24 (Doppler radar sensor processor such as Texas Instruments TMS320); 4:63-65 (commercially available antennas for specific beam patterns); 5:13-15 (ultrasonic sensor processor such as Philips Semiconductors P8051); 8:23-27 (common configuration for IR camera sensor); 8:47 (standard camera); 8:60-65 (infrared laser sensor may include a Texas Instruments DMD). Although Plaintiff asserts the accused products implement the "technological solution," this "implementation" is neither disclosed in the patent nor relevant to validity. *See* DI 29 at 14.

6

### C. There Are No Disputed Facts.

Without identifying a disputed fact, Plaintiff makes the assertion that its pleadings raise questions of fact. However, "a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact." *Romero v. Lann, No. CIV A 506CV82*, 2007 WL 2010748, at *3 (E.D. Tex. July 6, 2007), aff'd, 305 F. App'x 242 (5th Cir. 2008) (disregarding bald allegations of a factual dispute in the summary judgment context). Moreover, Plaintiff's reference to "the innovative nature of the Wells Patents" is misguided, as "section 101 does not turn on novelty, and thus the fact that [plaintiff's] apparatus may have been unconventional … does not mean that the claims necessarily incorporate an 'inventive concept.'" *Epic IP LLC v. Backblaze, Inc*., --- F. Supp. 3d. ---, No. CV 1:18-141-WCB, 2018 WL 6201582, at *14 (D. Del. Nov. 26, 2018).

## IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR INDIRECT INFRINGEMENT

The indirect infringement claims fail: because there is no plausible claim for direct infringement (*see Lochner Techs., LLC v AT Labs Inc.*, no. 2:11-cv-242-JRG, 2012 WL 2595288, at *2 (E.D. Tex. July 5, 2012)); and because the boilerplate pleading is inadequate.

### A. Induced Infringement

LGE's motion established the inducement claims are so threadbare and generic as to be practically meaningless. DI 24 at 14-17. The allegations are made generically as to all asserted patents without any reference to specific actions taken by any specific LGE entity, and are repeated nearly verbatim in each of Plaintiff's numerous complaints. Plaintiff claims that its complaint is sufficient because it "specifically pleaded that LG committed acts of inducing infringement, including, for example, 'distributing instructions that guide users to use the products in an infringing matter.'" DI 29 at 16 (quoting DI 1 at ¶ 72). But this ignores the fact that the complaint contains no factual support for that conclusory allegation--especially with respect to materials published by third

7

parties such as Google. Those materials cannot establish that any LGE entity took active steps to allegedly induce infringement.

Plaintiff's reliance on *Cywee Group Ltd. v. Huawei Device Co.*, 2:17-CV-495-WCB, 2018 WL 3819392, at *2 (E.D. Tex. Aug. 10, 2018) is unavailing. The *Cywee* court declined to dismiss claims of indirect infringement based on the allegation that defendant "provides manuals and instructions … and/or provides instructional and support materials on its website that teach and instruct its customers to operate [the accused] products in ways that practice the claimed invention." *Id*. (quoting complaint). But the *Cywee* complaint, unlike this one, illustrated the allegations by "describ[ing] three user manuals that teach allegedly infringing behavior, and *attach[ing] each to the third amended complaint*." *Id*. at *4 (emphasis added). Here, the complaint lacks such factual detail, and its inducement claims are, therefore, not plausible.

### B. Contributory Infringement

The contributory infringement allegations suffer similar deficiencies. Made in a single, generic paragraph for all of the asserted patents, the contributory infringement allegations simply recite the accused features and parrot the legal standard. Plaintiff contends these boilerplate allegations are sufficient because it "specifically pleaded that the accused products have special features that have no substantial use other than uses that infringe [Plaintiff] patents." DI 29 at 18. But, as LGE pointed out, these "special features" are defined in generic, circular terms that fail to provide fair notice of what is alleged to infringe. DI 24 at 16-17. For example, as to the Maria patents, AP alleges that LGE's devices feature "initiation and/or control of Internet streamed content." DI 1 at ¶¶ 18, 30. As discussed above, the only features relating to "initiation and/or control of Internet streamed content" referenced in the complaint are third-party Google's Home app and Chromecast

device, neither of which is a component of LGE's accused products. The contributory infringement allegations should be dismissed.

### C. Pre-Suit Allegations and Willful Blindness

Plaintiff's allegations of indirect infringement as to pre-suit conduct suffer from an additional, fatal flaw: the complaint fails to plausibly allege "that LGE had knowledge of the asserted patents prior to the filing of the complaint." DI 24 at 17. Plaintiff argues its pre-suit claims are supported by its "alleg[ation] that LG was willfully blind to the existence of the asserted patents before the suit was filed…." DI 29 at 18. This allegation is neither plausible nor sufficient to support a claim of pre-suit indirect infringement.

First, the canned nature of its allegation—repeated verbatim in numerous other complaints—demonstrates that Plaintiff has no factual basis for it. Plaintiff does not cite to even a single comment associated with LGE to support its claim. The purported support, provided in its opposition, is that Prof. Mark Lemley said in a law review article that "[v]irtually everyone does it." DI 29 at 19. This unsworn opinion writings about Prof. Limley's belief concerning the alleged culture of technology companies does not support a claim that LGE blinded itself to the existence of these patents. *Iqbal* and *Twombly* require real factual allegations, not industry gossip and supposition, to support every claim.

Further, a company's dislike of patents generally does not meet the willful blindness standard articulated by the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011). The Supreme Court explained that "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id*. at 769 In *Nonend Inventions, N.V. v. Apple, Inc.*, No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740, at *2-3 (E.D. Tex. 2016)), the court found, "Motorola's policy

9

of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness.' The Court finds that more must be alleged to show a policy of ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of 'willful blindness.'" *Id*, at *3 (quoting *Global-Tech*, 563 U.S. at 769). Plaintiff, however, does not allege anything more than Defendant's purported ignoring of patents in general.

## V. THE COMPLAINT FAILS TO STATE A CLAIM OF WILLFUL INFRINGEMENT

LGE's motion made three simple points regarding Plaintiff's allegations of willful infringement. First, the complaint does not allege pre-suit knowledge of any of the patents. DI 24 at 17. Second, there is no factual support for the conclusory allegations that LGE's infringement "is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of American Patent's rights" and that LG's actions are at least objectively reckless as to the risk of infringing valid patents and this objective risk was either known or should have been known by LG." *Id.* at 19. Third, the allegation regarding LGE's alleged policy of blinding itself to patents is both unsupported and implausible, and thus cannot support a claim of pre-suit knowledge. *Id.*

Plaintiff's argument on willful infringement rehashes the rest of its opposition, claiming that its boilerplate allegations are enough to support its claim of willfulness. But just like its direct and indirect infringement allegations, the willfulness allegations are too conclusory to be entitled to the presumption of truth under *Iqbal*/*Twombly*. The complaint does not contain any allegations of particular actions taken by LGE that could constitute willful infringement.

## VI. CONCLUSION

For the reasons set forth above and in the motion, LGE respectfully requests that the Court grant its motion and dismiss the complaint.

Dated: February 1, 2019

/s/ *Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
Tyler, TX 75701
Telephone:     (903) 509-5000
Facsimile:     (903) 509-5092

R. Tyler Goodwyn, IV (D.C. Bar. No. 469685)
tyler.goodwyn@dentons.com
Eric Y. Wu (D.C. Bar No. 995396)
eric.wu@dentons.com
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

*Attorneys for Defendants LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Alabama, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 1, 2019.

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth